STATE OF NORTH CAROLINA v. BRUCE BYRD

No. 708SC515

(Filed 16 December 1970)

1. Criminal Law § 156— appellate review — granting of certiorari

The Court of Appeals allows defendant's petition for *certiorari* and considers his case on its merits, where defendant failed to docket his record on appeal within the time provided by the rules of the Court.

2. Criminal Law § 99— remarks of trial court during trial — expression of opinion on defendant's testimony

Trial judge improperly expressed an opinion on the credibility and probative value of defendant's testimony when he said to the defendant, in the presence of the jury, that if he (the judge) "had some witnesses who saw what you say they saw, I would have them here." G.S. 1-180.

3. Criminal Law § 99— remarks of trial court during trial — prejudicial effect

Remarks of the court during a trial will not entitle a defendant to a new trial unless they tend to prejudice the defendant, and the question of whether prejudice resulted is to be considered in the light of the circumstances under which the remarks were made.

4. Criminal Law § 99— remarks of trial court during trial — expression of opinion on evidence

Trial court's instruction to the jury that the investigating officer testified "substantially the same as the prosecuting witness testified to here on the witness stand," *held* erroneous in expressing an opinion on the evidence, since the question of whether the officer's testimony did corroborate that of the prosecuting witness was a question of fact for the jury.

APPEAL by defendant from *Superior Court Judge Bundy*, 23 March 1970 Session of Superior Court held in LENOIR County.

Defendant was tried upon a bill of indictment, proper in form, charging him with a felonious assault upon Arthur T. Brafman with a deadly weapon, to wit: a .38 caliber pistol, with intent to kill, inflicting serious injuries not resulting in death.

When the case was called for trial, the defendant, in writing, waived the assignment of counsel and expressed the desire to represent himself. This was done in open court after he had been informed of the charges against him and of his right to have counsel assigned by the court.

The defendant pleaded not guilty. The jury found the defendant guilty of an "assault with a deadly weapon *per se,* inflicting serious injury."

From judgment of imprisonment, the defendant appealed to the Court of Appeals.

*Attorney General Morgan and Trial Attorney Jacobs for the State.*

*Braswell, Strickland, Merritt & Rouse by Roland C. Braswell for defendant appellant.*

MALLARD, Chief Judge.

[1] Defendant's record on appeal was docketed on 13 July 1970. Under the rules of practice in this court, it should have been docketed within ninety days after 24 March 1970. On 13 November 1970 defendant filed a petition for *certiorari* as a substitute for an appeal. This petition is allowed, and the case is considered on its merits.

The evidence for the State tended to show that on 21 November 1969 the prosecuting witness, Brafman, and three other Marines were on their way back to Camp Lejeune after having attended a dance in Kinston. They stopped at defendant's place of business to buy some beer. The three companions of the prosecuting witness went into the place of business. The prosecuting witness remained in the car. The defendant refused to sell them any beer and struck one of them in the face with his fist and then hit him with a fan belt. He left the store and told the prosecuting witness what had occurred. The prosecut-

ing witness thereupon went into the defendant's place of business to investigate the matter. The defendant, without provocation, thereupon shot the prosecuting witness with a .38 caliber pistol.

The bullet went through his arm, penetrated his body, and at the time of the trial was located in his spinal canal. As a result of the bullet wound, he remained in the hospital for approximately six weeks and at the time of the trial in March 1970 was still experiencing pain from the wound.

[2] The defendant testified in his own behalf but offered no other witnesses. The evidence for the defendant tended to show that the prosecuting witness came in his place of business on Saturday morning, the 22nd, and "wanted to know what in hell was going on" and began arguing and contending that somebody "had about murdered his buddy." Defendant testified that he told the prosecuting witness, " * * * No, I asked him to leave and he wouldn't and I just persuaded him, and I said it is about time for you to go now and I fired one time in the ceiling, that's all I done." On cross-examination the defendant stated that there were four other people there besides himself when the "boy" came in there and asked for some beer and that a Mr. Rufus Allen was there all the time on this occasion. Mr. Allen was working for the defendant at the time of the trial. He also testified:

"I ain't shot nobody. I just shot to show I meant business. I didn't shoot intending to hit him. I shot up in the ceiling. I don't know where the bullet came from that entered his body, if there's one in him."

During the cross-eaxamination of the defendant, the following colloquy took place:

"[BY THE COURT: Let me ask you one thing. You say there were two men there that lived in Jones County.

A: Yes, sir.

Q: A Mr. Allen?

A: No, Mr. Allen lives in Lenoir County.

Q: I know that. Two live in Jones County and where are the others?

A: One of them, someone said he had moved to Washington, D. C. I don't know where the boy lives.

Q: Those in Jones County, why don't you have them sub-poenaed?

A: (First few words of the witness were not audible to the reporter.) He said he hadn't indicted nobody.

Q: He said what?

A: He hadn't indicted nobody.

BY THE REPORTER: I did not understand what he said.

BY THE COURT: Q: Why didn't you have them subpoenaed as your witnesses to testify for you?

A: Well, I had some subpoenaed when those darkies tried to hold me up and you know how many showed up? One man.

Q: When you have a man subpoenaed, he has got to come or the court can send the sheriff after him.

A: Well, he didn't bring them.]

EXCEPTION No. 3.

[Q: If you don't want to have them here, that's up to you, but if I had some witnesses who saw what you say they saw, I would have them here.]

EXCEPTION No. 4.

\*       \*       \*

Q: Do you really want Mr. Allen here?

A: I could get him if I wanted to. Yes, sir.

[BY THE COURT: That's not what he asked you. He said, do you want him here?

A: Well, I could get him right now if I could get to a tele-phone.

BY THE COURT: He didn't ask you that. He asked you if you wanted him here?

A: No, not now, I don't.]"

The defendant contends that the trial judge, in thus ques-tioning the defendant, expressed an opinion and violated the provisions of G.S. 1-180.

In 7 Strong, N. C. Index 2d, Trial, § 10, it is said:

"GS 1-180 applies not only to the charge of the court, but also prohibits the court at a jury trial from expressing an opinion on the evidence or the veracity of the witnesses at any time during the trial in any manner, or in any form, by word of mouth or by action, and prohibits the trial judge from asking questions or making comments at any time during the trial which amount to an expression of opinion as to what has or has not been shown by the testimony of a witness.

It is proper for the court to ask a witness questions for the purpose of clarifying the witness' testimony, but in so doing the court should be careful not to express an opinion on the facts or impeach or discredit the witness."

[3] The judge may not make a statement or ask a defendant or a witness questions tending to impeach him or to cast doubt on his credibility or which intimate that a fact has or has not been established. However, remarks of the court during a trial will not entitle a defendant to a new trial unless they tend to prejudice the defendant, and the question of whether prejudice resulted is to be considered in the light of the circumstances under which the remarks were made. 2 Strong, N. C. Index 2d, Criminal Law, § 99. *State v. Simpson,* 233 N.C. 438, 64 S.E. 2d 568 (1951).

In *State v. Canipe,* 240 N.C. 60, 81 S.E. 2d 173 (1954), it is stated: "Whether the conduct or the language of the judge amounts to an expression of his opinion on the facts is to be determined by its probable meaning to the jury, and not by the motive of the judge. * * *" See also *State v. Williamson,* 250 N.C. 204, 108 S.E. 2d 443 (1959).

[2] We think that the judge expressed an opinion as to the credibility and probative value of the defendant's testimony when he said to the defendant, in the presence of the jury, that if he (the judge) "had some witnesses who saw what you say they saw, I would have them here." It apparently was done by the experienced trial judge in an effort to help the defendant who was without counsel; however, we think it could have and probably did lead the jury to believe that the trial judge thought the defendant's testimony was of little probative value and needed supporting evidence or that the witnesses, if present, would not support the defendant's testimony. We think, under

the circumstances revealed by this record, that this was preju-
dicial error, entitling the defendant to a new trial. This effect
was again emphasized after the defendant was asked by the
solicitor if he wanted Mr. Allen as a witness. The defendant
finally replied, "Yes, sir." The judge apparently overlooked his
answer and, in substance, repeated the question twice. The de-
fendant, evidently confused, replied in the negative. We think
that the questions and statement of the judge influenced the jury
is indicated by the fact that after the jury had been charged
and was considering the case, the jury returned to the court-
room and the following occurred:

> "(By Juror: Would there be reason to think that at a sec-
> ond trial more evidence could be presented:
>
> By the Court: I don't know, I could not tell you, I have
> no means of knowing. It has been some time and everybody
> has had opportunity to get what evidence here they wanted.
> I just don't know.)"

[4] Defendant contends that the judge also committed error
by expressing an opinion in the following portion of the charge:

> "(Lieutenant Shannon testified that Brafman told him at
> the hospital what you have just heard him testify, sub-
> stantially the same as Brafman testified to here on the
> witness stand, and that so did the other man, Johnny
> Stefanyszym.)"

The vice in this instruction is that when the judge told the
jury that the witness Shannon testified "substantially the same
as Brafman testified to here on the witness stand," he inad-
vertently told the jury that the testimony of the prosecuting
witness, Brafman, was corroborated by the witness Shannon.
The question of whether the testimony of Shannon did corrobo-
rate that of Brafman was a question of fact for the jury. *State
v. Case,* 253 N.C. 130, 116 S.E. 2d 429 (1960), *cert. denied,* 365
U.S. 830, 5 L. Ed. 2d 707, 81 S. Ct. 717 (1961).

Defendant has other assignments of error which we do not
discuss since he is entitled to a new trial.

New trial.

Judges Parker and Graham concur.