STATE OF NORTH CAROLINA v. ALICE BIGGS WILLIAMS

No. 722SC690

(Filed 20 December 1972)

1. **Criminal Law § 99— questions asked by trial judge — no expression of opinion**

   Questions asked witnesses by the trial judge in a second degree murder case did not amount to an expression of opinion in violation of G.S. 1-180.

2. **Criminal Law § 163— failure to except to or assign error to charge**

   Defendant's contention that the trial judge incorrectly defined the term "general malice" in his charge to the jury will not be considered on appeal where defendant did not except to that portion of the charge and did not assign that portion as error. Court of Appeals Rules 21 and 28.

APPEAL by defendant from *Cohoon, Judge,* 6 March 1972 Session of Superior Court held in MARTIN County for the trial of criminal cases.

Defendant was tried upon a bill of indictment, proper in form, charging the defendant, Alice Biggs Williams, with first degree murder. Defendant pleaded not guilty.

The evidence for the State tended to show that on or about 29 November 1971, at about 12:00 midnight, Eddie Wilson, the deceased, and the defendant left the defendant's residence on Susie Street in Williamston, North Carolina, where they had been watching television, defendant having told deceased that she would take deceased home in her car. Deceased and defendant, a widow, were friends. When they had driven to the vicinity of Andrew Street, near West Main Street, defendant stopped her car and told deceased to get out. After deceased had left the car, defendant walked around to the rear of the car, stated that she needed $52.00 to pay Roanoke Chevrolet Company, and then raised a small gun and shot deceased in the abdomen.

After having been shot, deceased ran toward the nearby Brown residence where he broke open the front door and entered the hall, calling for assistance. Mr. and Mrs. Brown, hearing the commotion, opened the hall door and observed the deceased lying on the floor. Deceased asked for a doctor, told the Browns he had been shot by the defendant and showed them the bullet hole in his abdomen. Mrs. Brown called the local police and Sergeant Melvin Lilley went to the Brown residence at 12:39 a.m. While waiting for an ambulance to arrive, deceased related to Sergeant Lilley the foregoing sequence of events leading up to the shooting.

J. G. Myers testified that he was an ambulance driver and that he had taken deceased from Martin General Hospital to Beaufort County Hospital at about 1:00 a.m. on 29 November 1971 and that at Beaufort Hospital, while waiting for a doctor to arrive, deceased had said, "I am dying, I am dying. I don't know why Bootie Gal shot me. Bootie Gal didn't have any reason for shooting me." Defendant Williams was also known by the name of "Bootie Gal."

The State also introduced medical evidence tending to show that deceased died as a result of complications from a gunshot wound in the abdomen.

Defendant offered evidence tending to show that on Sunday, 28 November 1971, at about 6:00 p.m. she drove by deceased's residence and gave deceased a ride to a house on Andrew Street. From there, defendant went to visit friends until about 10:30 when she drove back to her home. At about 12:25 a.m. on 29 November 1971, deceased, who had been admitted theretofore to defendant's house by defendant's nephew while the defendant was asleep, requested that she (defendant) drive him to his home. Defendant acquiesced and drove deceased toward his home. Near the intersection of Andrew Street and West Main Street, defendant stopped the car and got out in order to urinate. Deceased also got out and went around to the rear of the car, where he asked defendant to "go home and stay with him." She refused. Deceased grabbed defendant and told her she would go home with him and she was going to have sex with him out there. Defendant pushed him away; whereupon, deceased drew a knife and was coming toward her with the knife in his hand. Defendant became scared and shot deceased when he was about three feet from her. Thereafter, defendant called her brother and met him later that night.

Defendant also introduced evidence tending to show that her character and reputation in the community were good.

The defendant's motion for dismissal of the first degree murder charge was allowed, but a motion for nonsuit as to all charges was denied. Charges of murder in the second degree and manslaughter were submitted to the jury, and a verdict of guilty of murder in the second degree was returned. From judgment thereon sentencing defendant to 20-25 years in prison, defendant appealed, assigning error.

*Attorney General Morgan and Associate Attorney Maddox for the State.*

*Milton E. Moore for defendant appellant.*

MALLARD, Chief Judge.

Defendant sets forth 28 assignments of error based on 26 exceptions noted in the record and two exceptions not noted in the record.

[1] In her brief, defendant presents three questions on appeal. Her first contention is that the trial judge committed prejudicial error by questioning several witnesses at the trial in a manner which constituted an expression of opinion as to the weight and sufficiency of the evidence in violation of G.S. 1-180. While G.S. 1-180 prohibits the court from expressing an opinion as to what has or has not been shown by the testimony of a witness, it is not improper for the court to ask questions for the purpose of obtaining a proper clarification and understanding of the testimony. *State v. Freeman,* 280 N.C. 622, 187 S.E. 2d 59 (1972); *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968), *cert. denied,* 393 U.S. 1087; *State v. Perry,* 231 N.C. 467, 57 S.E. 2d 774 (1950); *State v. Case,* 11 N.C. App. 203, 180 S.E. 2d 460 (1971); *State v. Huffman,* 7 N.C. App. 92, 171 S.E. 2d 339 (1969), *cert. denied,* 276 N.C. 328.

Viewing each of the challenged questions and remarks of the trial court in the light of the circumstances under which it was made, as we are bound to do, we are of the opinion that none of the judge's questions or remarks in this case amounted to an expression of opinion and that they did not tend to be prejudicial to the defendant. See *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9 (1951); *State v. Byrd,* 10 N.C. App. 56, 177 S.E. 2d 738 (1970).

[2]   Defendant's second question in her brief is to the charge of the judge to the jury. Defendant contends that the judge incorrectly defined the term "general malice." However, defendant did not except to that portion of the charge, nor has defendant assigned that portion of the charge as error. In the brief, the only authority cited for this contention is "235 NC 517." The case at that page of Volume 235 of the North Carolina Reports has no bearing whatsoever on the case at hand. For failure to comply with Rules of Practice in the Court of Appeals Nos. 21 and 28, this contention is not properly presented.

In her third question, defendant contends that the trial court committed error by requiring the defendant to answer, on cross-examination, the question excepted to under the following circumstances:

"MR. GRIFFIN: You have been convicted of shooting a man before, haven't you?

MRS. WILLIAMS: Yes in 1970.

MR. GRIFFIN: Did you use this same gun to shoot him?

Objection Overruled, EXCEPTION No. 21

MRS. WILLIAMS: No, I found this gun in the house later."

Conceding without deciding that the question excepted to may have been improper, we hold that under the circumstances of this case, the judge, in overruling the objection to it, did not commit prejudicial error.

We have considered all of defendant's assignments of error properly presented and are of the opinion that the defendant has had a fair trial free from prejudicial error. The question of defendant's guilt or innocence was resolved by the jury against her, and the evidence of the State supported the verdict.

No error.

Judges BROCK and BRITT concur.