STATE OF NORTH CAROLINA v. JOHNNIE LOCKLEAR

No. COA98-1638

(Filed 7 March 2000)

**1. Evidence— document—sufficient indicia of trustworthiness**

The trial court did not err in an assault with a firearm on a law enforcement officer case by accepting into evidence a mutual aid agreement between Robeson County and the town of Red Springs to show that the assaulted officer was acting as a government officer at the time of the incident because: (1) the State laid a sufficient foundation under N.C.G.S. § 8C-1, Rule 901(a) to establish the trustworthiness of the document by getting an officer to testify that the document was a fair and accurate copy of the agreement; (2) even though the jury never saw the detailed provisions of the agreement, neither party moved to pass the agreement among the jurors; and (3) defendant had the opportunity to cross-examine on the contents of the agreement, but chose not to do so.

**2. Assault— firearm on a law enforcement officer—sufficiency of evidence**

The trial court did not err in an assault with a firearm on a law enforcement officer case by denying defendant's motion to dismiss at the end of the State's evidence, based on the theory that the assaulted officer was not a government officer at the time of the incident since he was outside the jurisdiction of the Red Springs Police Department, because: (1) Robeson County's Mutual Aid Agreement allowed for police assistance to be made on an emergency basis, which in this case was a reported stabbing; (2) the Robeson County officer was transporting a prisoner when he received the order to investigate the stabbing, and thus needed emergency assistance from Red Springs Police Department; and (3) the Red Springs officer was in uniform at the time of the incident, and he was clearly attempting to enforce the law by assisting the Robeson County officer.

**3. Criminal Law— instructions—requested—officer beyond jurisdiction—not justified in using deadly force**

The trial court did not err in an assault with a firearm on a law enforcement officer case by failing to give defendant's requested special jury instruction, that the officer was beyond his jurisdiction and defendant had a right to resist, because even if defendant were correct that the entry was illegal or the arrest was unauthorized, N.C.G.S. § 15A-401(f) states that a person is not justified in using deadly force to resist arrest when the person knows or has reason to know that the officer is a law enforcement officer attempting to make an arrest.

**4. Criminal Law— instructions—taken out of context**

The trial court did not err in an assault with a firearm on a law enforcement officer case by overruling defendant's objection to the jury charge that a Red Springs police officer had the duty to assist the Robeson County Sheriff's Department because defendant has taken a portion of the jury charge out of context since the trial court was not stating his opinion, but rather what the State was required to prove.

**5. Evidence— lay opinion—intoxication**

The trial court did not err in an assault with a firearm on a law enforcement officer case by allowing an officer to answer whether defendant appeared to be intoxicated because N.C.G.S. § 8C-1, Rule 701 allows a lay witness to give an opinion as to the

intoxication or sobriety of another, and the evidence reveals the officer was close enough to observe defendant's actions.

**6. Criminal Law— instructions—intoxication—relevant to conduct and motives**

The trial court did not abuse its discretion in an assault with a firearm on a law enforcement officer case by denying defendant's objection, motion to strike, and request for a jury instruction that an officer's answer, concerning whether defendant appeared to be intoxicated, had no substantive value because: (1) evidence of defendant's intoxication is relevant to an understanding of his conduct and motives, and the conduct and motives of the police officers who were observing defendant's behavior; and (2) the relevant evidence is not substantially outweighed by the danger of unfair prejudice under N.C.G.S. § 8C-1, Rule 403.

**7. Evidence— witness directed to answer yes or no—no prejudicial error**

The trial court did not err in an assault with a firearm on a law enforcement officer case by directing an officer to answer yes or no to the question of whether he had any information that defendant had committed a crime, based on the theory that the jury was unfairly prevented from hearing that the witness had no personal knowledge of the assault, because: (1) the officer's testimony on cross-examination indicated he had no personal knowledge of the assault; and (2) defendant concedes this error would not tend to prejudice the outcome of the case.

**8. Evidence— hearsay—not an out-of-court statement**

The trial court did not err in an assault with a firearm on a law enforcement officer case by allowing the State to ask an officer whether he had any information that defendant had committed a crime, based on the information allegedly being hearsay since it was relayed to the officer by a third party, because the witness did not testify about an out-of-court statement but merely testified that he did have information that defendant committed a crime. N.C.G.S. § 8C-1, Rule 801(c).

Appeal by defendant from judgment entered 9 September 1997 by Judge Robert Frank Floyd, Jr. in Robeson County Superior Court. Heard in the Court of Appeals 3 January 1999.

STATE v. LOCKLEAR

[136 N.C. App. 716 (2000)]

*Attorney General Michael F. Easley, by Assistant Attorney General Gaines M. Weaver, for the State.*

*Donald W. Bullard for defendant-appellant.*

EAGLES, Chief Judge.

The defendant, Johnnie Locklear, Jr., was tried and convicted of assault with a firearm on a law enforcement officer at the 8 September 1997 criminal session of Robeson County Superior Court.

On 15 October 1994, a Red Springs police dispatcher, Linda Stone, received a call about the alleged stabbing of Tessie Locklear by her husband, Johnnie Locklear, at their home three to four miles outside the Red Springs city limits. Ms. Stone transmitted a message over the Red Springs frequency telling all Red Springs police units to stand by because she had received an emergency call for Robeson County. Ms. Stone then transmitted the message about the emergency call over the Robeson County frequency. She stated, "I have a subject on the line, advised he was at a residence. There was a stabbing in progress . . . [H]e could hear the female subject, in the residence, screaming . . . ." The Robeson County Sheriff's Department radioed Deputy Davis instructing him to investigate the call. Captain Jerry Parker of the Red Springs Police Department heard the dispatch over the scanner and knew Deputy Davis was alone in the area. Captain Parker sent one of the Red Springs officers, Officer Chavis, to assist Deputy Davis. Meanwhile, Deputy Davis radioed for assistance from the Red Springs Police Department because he was transporting a prisoner when he had been instructed to investigate the stabbing. Officer Chavis heard Deputy Davis' request for assistance and answered the call. The two police officers met at the driveway leading to the Locklear residence. Deputy Davis then secured the prisoner in his patrol car. Together, the officers entered defendant's home. Defendant Locklear repeatedly told them to leave.

At this point, Officer Chavis followed Locklear into a dark room. Officer Chavis thought he heard a shotgun shell being chambered into a shotgun, and he felt something like a shotgun on his neck. The officer knocked the shotgun away and drew his own weapon. Officer Chavis followed Defendant Locklear out of the room. Then the two police officers went outside and walked toward the back of the residence where they found Tessie Locklear with a torn, bleeding lip. She was taken by ambulance to Laurinburg Hospital where she was treated.

Once the two officers were outside, defendant went out on the porch and waved his shotgun in the air telling everyone to leave the premises. Terrie McNeill, a dispatcher from Red Springs Police Department who had been riding with Officer Chavis, called for backup. Officers from Red Springs responded, gathering in front of the house. Captain Parker testified that defendant "was out in the ·front yard with a shotgun, pointing it at us . . . ." Officer Victoria Bartch testified that defendant aimed his shotgun at the police officers in front of the house. She further testified that defendant walked towards Officer Chavis while carrying his shotgun, saying "F---- you, I am going to kill you." The defendant was arrested forty-five minutes later.

The jury found defendant guilty of assault with a firearm on a law enforcement officer in violation of N.C.G.S. § 14-34.2. The trial court imposed a sentence of imprisonment for a minimum of fifteen months and a maximum of eighteen months. The defendant appeals.

[1] We first consider whether the trial court erred by accepting into evidence State's exhibit 1, the "Robeson County Inter-Governmental Mutual Aid Agreement" with the town of Red Springs. The State sought to introduce the agreement in order to show that Officer Chavis was acting as a government officer at the time of the incident. This agreement provides that the two law enforcement agencies may request temporary law enforcement assistance from each other. The agreement states "[t]he head law enforcement officer of each of the parties hereto is empowered to request assistance under this agreement." Additionally, the agreement provides "that where a request is made on an emergency basis, the execution of this contract shall be deemed the required written request . . . ."

The defendant contends that the trial court admitted the document into evidence before the State laid sufficient foundation and properly authenticated the document. Additionally, defendant argues that he was prejudiced by the admission of the document into evidence without an explanation of its contents. According to defendant, the jury never saw the detailed provisions of the mutual aid agreement; rather, they only saw that the agreement existed. Consequently, defendant contends, the jurors were unable to determine whether the Red Springs Police Department violated the agreement.

We conclude that the trial court did not err in admitting the agreement into evidence. Under North Carolina Rules of Evidence, Rule 901(a), "[t]he requirement of authentication or identification as a con-

STATE v. LOCKLEAR

[136 N.C. App. 716 (2000)]

dition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C.G.S. § 8C-1, Rule 901(a). Here, the transcript indicates that the State asked Captain Parker, a Red Springs officer, whether he recognized the exhibit. He identified it as a copy of the Mutual Aid Agreement between Robeson County and all police departments in the county. Captain Parker then confirmed that it was a fair and accurate copy of that agreement. The State laid a sufficient foundation to establish the trustworthiness of the document. We conclude that the document was properly authenticated before it was admitted into evidence. Additionally, we note that neither party moved to pass the agreement among the jurors. Further, defendant had the opportunity to cross-examine on the contents of the agreement. Defendant chose not to do so. Defendant cannot now complain that the jury never saw the detailed provisions of the agreement.

[2] We next consider whether the trial court erred by denying the defendant's motion to dismiss at the end of the State's evidence. The defendant argues that the State did not meet its burden of showing that Officer Chavis was a government officer at the time of the incident because the officer was outside the jurisdiction of the Red Springs Police Department. Under N.C.G.S. § 15A-402, "[l]aw enforcement officers of cities may arrest persons at any point which is one mile or less from the nearest point in the boundary of such city." Here, the Locklear home was three to four miles outside the boundary of Red Springs. However, N.C.G.S. § 160A-288 provides that the head of any law enforcement agency may temporarily provide assistance to another agency in enforcing the laws of North Carolina. This may be done "in accordance with rules, policies, or guidelines officially adopted by the governing body of the city or county . . . ." Defendant argues that the State failed to show that the provisions of N.C.G.S. § 160A-288 and the Mutual Aid Agreement were followed.

The defendant acknowledges that the Mutual Aid Agreement provides that the request for assistance may be made on an emergency basis. However, defendant contends that there was no emergency here. Consequently, the defendant asserts that Officer Chavis was acting outside his proper jurisdiction, and the defendant's actions were legal because Officer Chavis was a trespasser.

In response, the State relies on *State v. Gaines*, 332 N.C. 461, 421 S.E.2d 569 (1992), *cert. denied*, 507 U.S. 1038, 123 L. Ed. 2d 486 (1993), a first-degree murder case in which the victim was an off-duty, in uniform, Charlotte police officer working as a night security guard.

STATE v. LOCKLEAR

[136 N.C. App. 716 (2000)]

The North Carolina Supreme Court held that the victim's status as a law enforcement officer could properly be used as an aggravating factor. Even an off-duty deputy is considered to be acting under the color of state law when the nature of his actions involve official police action to enforce the law. *See id.* at 473, 421 S.E.2d at 575. Additionally, the State relies on *State v. Williams*, 31 N.C. App. 237, 229 S.E.2d 63 (1976), in which a police officer made a DUI arrest outside of the city in which he had jurisdiction. This Court held that the evidence he gathered during the arrest was admissible. *See id.*

After carefully reviewing the record, transcript, and arguments, we conclude that the State did show that Officer Chavis was acting in the course of his official duties as a governmental officer at the time of the incident. Under the Mutual Aid Agreement, the head of the Robeson County law enforcement agency could request assistance from the Red Springs law enforcement agency. However, where a request for assistance is made on an emergency basis, "the execution of this contract shall be deemed the required written request [for assistance]." Here, Deputy Davis of the Robeson County Police was responding to a reported stabbing. He was the only Robeson County officer in the vicinity of the Locklear residence. Because the deputy was transporting a prisoner when he received the order to investigate the stabbing, he called Red Springs and asked for assistance. This situation constitutes an emergency under the Mutual Aid Agreement. Finally, we note that the evidence showed Officer Chavis was in uniform at the time of the incident, and that he was clearly attempting to enforce the law by assisting the deputy sheriff. Defendant knew that but proceeded to assault him. For these reasons, we conclude that the State did produce sufficient evidence that Officer Chavis was acting as a governmental officer at the time of the incident. Accordingly, we conclude the trial court did not err in denying the defendant's motion to dismiss.

[3] We next consider whether the trial court erred in failing to give defendant's requested special jury instruction. Defendant contends that the trial court was obligated to instruct the jury that if Officer Chavis was beyond his jurisdiction, the defendant had a right to resist. According to defendant, when an officer makes an illegal entry into a person's home, anyone "who resists an illegal entry is not resisting an officer in the discharge of the duties of his office." *State v. Sparrow*, 276 N.C. 499, 512, 173 S.E.2d 897, 906 (1970). Defendant asserts that Officer Chavis entered the defendant's residence without a legal warrant or probable cause. Defendant argues that the trial

STATE v. LOCKLEAR

[136 N.C. App. 716 (2000)]

court's failure to give this requested instruction was reversible error entitling defendant to a new trial.

We are not persuaded. Under N.C.G.S. § 15A-401(f), a person is not justified in using deadly force to resist arrest when the person knows or has reason to know that the officer is a law enforcement officer attempting to make an arrest. The statute further provides: "[t]he fact that the arrest was not authorized under this section is no defense to an otherwise valid criminal charge arising out of the use of such deadly weapon or deadly force." N.C.G.S. § 15A-401(f). *See also State v. Guevara*, 349 N.C. 243, 254-55, 506 S.E.2d 711, 719 (1998), *cert. denied*, —— U.S. ——, 143 L. Ed. 2d 1013 (1999). Here, the defendant used a deadly weapon when he loaded a shotgun and placed it against Officer Chavis' neck. Even if defendant were correct in his argument that the entry was illegal or the arrest unauthorized, which we do not accept, defendant was not justified in using a deadly weapon against a law enforcement officer attempting to effect an arrest. Accordingly, we conclude that the trial court did not err in refusing to give defendant's requested special jury instruction.

[4] Next we consider whether the trial court erred in overruling defendant's objection to the charge to the jury. Defendant contends that the trial judge charged the jury that a Red Springs police officer has the duty to assist the Robeson County Sheriff's Department. Defendant argues that the duty to assist may arise only if the Mutual Aid Agreement and N.C.G.S. § 160A-288 have been fully complied with.

"When reviewing a trial court's charge to the jury, the instructions must be considered in their entirety." *State v. Parker*, 119 N.C. App. 328, 339, 459 S.E.2d 9, 15 (1995) (*citing State v. Davis*, 321 N.C. 52, 59, 361 S.E.2d 724, 728 (1987)). Our inspection of the transcript indicates that the defendant has taken a portion of the jury charge out of context. The trial judge charged the following:

> Now I charge that for you to find the defendant guilty of this offense, the State must prove four things beyond a reasonable doubt. First, . . . Second, . . . Third, . . . And Fourth, that the victim was in the performance of his duties, assisting the Robeson County Sheriff's Department in response to a call concerning an alleged stabbing, is a duty of a Red Springs police officer.

The trial judge was not stating his opinion, but rather what the State was required to prove. In order to find the fourth element proven, the

jury would have to find: first, that the victim was in the performance of his duties, and second, that assisting the Robeson County Sheriff's Department is a duty of a Red Springs Police Officer. We have carefully considered the charge to the jury and find no misstatement of the law or expression of opinion prejudicial to defendant. Accordingly, defendant's assignment of error is overruled.

[5] Next, we consider whether the trial court erred in allowing Officer Bartch to answer whether the defendant appeared intoxicated. Defendant argues that Officer Bartch was not in a position to perceive whether the defendant was intoxicated and that her testimony is speculative. We conclude that the trial court did not err in allowing Officer Bartch to answer the question.

Under N.C.G.S. § 8C-1, Rule 701, a lay witness may testify in the form of opinions or inferences if "those opinions or inferences [] are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." In general, a lay witness may give an opinion as to the intoxication or sobriety of another. *See State v. Adkerson*, 90 N.C. App. 333, 338, 368 S.E.2d 434, 437 (1988). *See also* 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 181 (5th ed. 1998). Here, defendant argues that Officer Bartch was not able to perceive whether the defendant was intoxicated. Officer Bartch arrived at the Locklear residence after Johnnie Locklear came out on the porch. She positioned herself behind the patrol car, near the front tire. From this vantage point, Officer Bartch was close enough to the defendant to hear what defendant was saying and the manner and tone with which he spoke. At trial, Officer Bartch testified, that she heard defendant say "I am going to kill that Chavis son of a bitch." She also stated, "[t]he whole time he was using profane language . . . ." Additionally, Officer Bartch was close enough to observe the defendant's actions. The officer testified that she "observed the defendant pump his shotgun. A round flew out of his shotgun. The defendant kind of fell over, picked up the round, and put it back into the shotgun." The officer stated that the defendant staggered as he walked on the porch, chambering the dropped round. This evidence indicates that Officer Bartch's opinion that the defendant appeared intoxicated was rationally based on her perception. Accordingly, we conclude that the trial court did not err in allowing the police officer to answer the question.

[6] We next consider whether the trial court erred in denying defendant's objection, motion to strike, and request for a jury instruction

that Officer Bartch's answer had no substantive value. Defendant argues that the officer's testimony regarding defendant's intoxication was not relevant to a determination of any element of the crime charged, and that its probative value is substantially outweighed by the danger of unfair prejudice.

Under Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C.G.S. § 8C-1, Rule 403. The court must balance the probative value of the evidence against its prejudicial effect. *See State v. Moseley*, 338 N.C. 1, 33, 449 S.E.2d 412, 432 (1994), *cert. denied*, 514 U.S. 1091, 131 L. Ed. 2d 738 (1995). Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial judge. *See State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986).

In *State v. Davis*, 265 N.C. 720, 145 S.E.2d 7 (1965), *cert. denied*, 384 U.S. 907, 16 L. Ed. 2d 360 (1966), the Supreme Court of North Carolina held that evidence of the defendant's intoxication was properly admitted in his trial for assault with attempt to commit rape. The Court stated, "[i]t is not required that evidence bear directly on the question in issue, but it is competent if it shows circumstances surrounding the parties necessary to an understanding of their conduct and motives . . . ." *Id.* at 723, 145 S.E.2d at 10. Here, evidence of defendant's intoxication is relevant to an understanding of defendant's conduct and motives, and the conduct and motives of the police officers who were observing defendant's behavior. The trial court concluded that the prejudicial effect of the evidence did not substantially outweigh the probative value. We conclude that the trial court did not abuse its discretion in admitting this evidence.

**[7]** Defendant next argues that the trial court erred in directing Deputy Davis to answer yes or no to the question of whether he had any information that defendant had committed a crime. Defendant argues that by directing Deputy Davis to answer yes or no, the trial court prevented the witness from explaining himself. The defendant's argument arises from the following excerpt from the transcript:

STATE: Did you have any information at this point that he had committed a crime?

DEFENDANT'S COUNSEL: Your Honor, we object to such a conclusion. We object to the question.

STATE v. LOCKLEAR

[136 N.C. App. 716 (2000)]

THE COURT: Overruled.

. . . .

STATE: Did you have any information at that time that he had committed a crime?

WITNESS: According to—

THE COURT: Answer the question, please, yes or no.

WITNESS: Yes.

Here, defendant contends that the witness was likely to respond to the question by saying "according to what Officer Chavis told me, I was aware that a crime had been committed. However, I did not see the assault take place." The defendant asserts that the trial court unfairly prevented the jury from hearing that the witness had no personal knowledge of the assault.

We note at the outset that Deputy Davis' testimony on cross-examination indicated that he had no personal knowledge of the assault. Deputy Davis testified, "I went around to the corner, which appeared to be the living room. I think Officer Chavis went behind Johnnie Locklear to the bedroom. There was a wall there. I really couldn't see what was going on." We conclude that the trial court did not err in directing the witness to answer yes or no. "[R]emarks of the court during a trial will not entitle a defendant to a new trial unless they tend to prejudice the defendant . . . ." *State v. Byrd*, 10 N.C. App. 56, 60, 177 S.E.2d 738, 741 (1970). Here, the comments of the trial judge do not prejudice the defendant in any way. The defendant concedes this in his brief when he states, "this error would not tend to prejudice the outcome of this case." We find that the defendant's assignment of error is without merit.

[8] We next consider whether the trial court erred by allowing the State to ask Deputy Davis whether he had any information that the defendant had committed a crime. After arguing that the trial court improperly stopped the witness from recounting what Officer Chavis had told him, defendant now complains that the trial court should not have allowed the State to ask this question because the answer is hearsay. According to defendant, any information Deputy Davis had would have been relayed to him by a third party because Deputy Davis was not in the room with the defendant and Officer Chavis.

We conclude that the trial court did not err. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c). Here, the witness' testimony is not hearsay. Deputy Davis merely testified that he did have information that the defendant had committed a crime. The witness did not testify about an out of court statement. Accordingly, this assignment of error is overruled.

No error.

Judges WYNN and WALKER concur.