JOHN ALLEN TAYLOR, PLAINTIFF-APPELLEE v. TOWN OF GARNER AND N.C. LEAGUE OF MUNICIPALITIES, DEFENDANT-APPELLANTS, AND N.C. STATE UNIVERSITY AND KEY RISK MANAGEMENT SERVICES, DEFENDANT-APPELLEES

No. COA09-1522

(Filed 1 June 2010)

## Workers' Compensation— mutual assistance agreement between town and university police departments— mounted patrol at university football game—town required to pay for injuries

The Industrial Commission did not err in a workers' compensation case by concluding that defendant town was responsible for payment of sums due to plaintiff police officer under the provisions of Chapter 97 of the North Carolina General Statutes. The town and university police departments substantially complied with the requirements of a mutual assistance agreement under N.C.G.S. § 160A-288, and it was undisputed that the officer sustained an injury arising out of and during the course of his employment when he was working as a mounted patrol officer at a university football game with powers to arrest. Further, the parties mutually agreed to the payment arrangement coming directly from the university.

Appeal by defendants Town of Garner and N.C. League of Municipalities from Opinion and Award entered 22 July 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 13 April 2010.

*Patterson Harkavy LLP, by Valerie A. Johnson and Narendra K. Ghosh, for plaintiff-appellee.*

*Teague Campbell Dennis & Gorham, LLP, by Dayle A. Flammia and Brad G. Inman, for defendant-appellants Town of Garner and N.C. League of Municipalities.*

*Attorney General Roy Copper, by Assistant Attorney General Marc X. Sneed, for defendant-appellee N.C. State University.*

TAYLOR v. TOWN OF GARNER

[204 N.C. App. 300 (2010)]

STEELMAN, Judge.

Where the Garner Police Department and the N.C. State Campus Police Department substantially complied with the requirements of the Agreement pursuant to N.C. Gen. Stat. § 160A-288 and it is undisputed that Officer Taylor sustained an injury arising out of and during the course of his employment on 27 October 2007, the Commission did not err by concluding that Town of Garner is responsible for payment of sums due to plaintiff pursuant to the provisions of Chapter 97 of the North Carolina General Statutes.

## I.  Factual and Procedural Background

The relevant facts of this case are not in dispute. John Allen Taylor (Officer Taylor) has been employed as a police officer by the Garner Police Department since 1988. In January 2007, Officer Taylor was involved in developing guidelines and training protocols for horses and officers, and subsequently established a volunteer mounted patrol unit for the Town of Garner.

In June 2007, the Garner Police Department and N.C. State Campus Police Department entered into a Mutual Assistance Agreement pursuant to N.C. Gen. Stat. § 160A-288 (Agreement). The Agreement provided that the Garner Police Department and N.C. State Campus Police Department would provide temporary assistance to each other in enforcing the laws of the state when requested. The Agreement further provided that while the officer is temporarily under the command of the requesting agency: (1) the officer shall have the same jurisdiction, powers, rights, and privileges as the requesting agency; and (2) for personnel and administrative purposes, the officer shall remain under the control of the assisting agency and shall be entitled to workers' compensation and other benefits to which he/she would be entitled if he/she was functioning within the normal course and scope of his/her duties with the assisting agency.

On 26 September 2007, Thomas Younce, Chief of the N.C. State Campus Police Department (Chief Younce) contacted Thomas Moss, Chief of the Garner Police Department (Chief Moss) by email and inquired into whether Officer Taylor would be available to work the 29 September 2007 football game at Carter-Finley Stadium on mounted patrol pursuant to the Agreement. Chief Moss approved the request. There was no further communication between Chief Younce and Chief Moss about Officer Taylor working future football games. Sergeant McIver, Officer Taylor's immediate supervisor, emailed Officer Taylor to inform him that the mounted patrol duty had been

approved, and indicated that he would receive overtime pay and did not need to complete a secondary employment request form.

On 29 September 2007, Officer Taylor reported to Carter-Finley stadium for work. Officer Taylor wore his Garner Police uniform and used equipment provided by the Garner Police Department. Officer Taylor completed tax forms at the request of N.C. State, and was paid $30.00 per hour for his 12-hour shift directly by the University. Chief Moss approved this payment method because Officer Taylor would make more money for the day's work. N.C. State would take out less taxes and no other deductions would have been required.

Following the first game, Officer Taylor was told by Sergeant McIver to submit a secondary employment request form because he was being paid directly by N.C. State. On 1 October 2007, Officer Taylor submitted this form for the remainder of N.C. State's home football schedule. On 4 October 2007, Sergeant McIver approved the form and, on 29 October 2007, Chief Moss also approved the form.

On 27 October 2007, Officer Taylor reported to Carter-Finley stadium to work the next scheduled football game on mounted patrol. At approximately 6:15 p.m., Officer Taylor and three other mounted officers decided to exercise their horses. Officer Taylor ran his horse in a field that was approximately 100 yards long and had a string of light poles. One pole had a guide-wire attached to it. Officer Taylor did not immediately see the guide-wire. The horse ran under the guide-wire and, upon seeing the wire, Officer Taylor put up his hand to protect his head. The wire caught his left hand, and he was knocked from the horse to the ground. Officer Taylor's left thumb was severed from his hand. He was taken to Rex Hospital and had emergency surgery to reattach his thumb.

The reattachment failed and on 3 December 2007, Officer Taylor's left thumb was amputated at the joint closest to his hand, resulting in the complete loss of his left thumb. Skin was grafted from the inside of his left forearm onto the top of the left thumb. After 7 months, Officer Taylor was able to qualify for his firearm certification and returned to his duties as a patrol officer on 27 May 2008.

All parties have stipulated that Officer Taylor sustained an injury arising out of and during the course and scope of his employment on 27 October 2007. Both the Town of Garner and N.C. State denied Officer Taylor's claim for workers' compensation benefits on the basis that there was no employer-employee relationship at the time of the accident. None of Officer Taylor's medical expenses have been

paid. The main controversy between the parties is whether Officer Taylor was working at N.C. State on 27 October 2007 pursuant to the Agreement. On 22 July 2009, the Commission entered an Opinion and Award and concluded that Officer Taylor was working on 27 October 2007 pursuant to the Agreement and that the Town of Garner was liable for his compensable injuries pursuant to N.C. Gen. Stat. § 160A-288. Officer Taylor's claims against N.C. State were dismissed with prejudice. Town of Garner and its insurance carrier, N.C. League of Municipalities, appeal. Plaintiff cross-assigns error to the Commission's failure to find, as an alternative basis for its decision, that Town of Garner and N.C. State are both liable for plaintiff's workers' compensation benefits as joint employers.

## II.  Standard of Review

"Appellate review of an opinion and award from the Industrial Commission is generally limited to determining: '(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact.' " *Hassell v. Onslow Cty. Bd. of Educ.*, 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008) (quotation omitted). "[F]ailure to assign error to the Commission's findings of fact renders them binding on appellate review." *Estate of Gainey v. Southern Flooring & Acoustical Co.*, 184 N.C. App. 497, 501, 646 S.E.2d 604, 607 (2007) (citation omitted). We review the Commission's conclusions of law *de novo*. *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

## III.  Mutual Assistance Agreement

Town of Garner argues that the Commission erred by concluding that Officer Taylor was working on 27 October 2007 pursuant to the Agreement and that it is liable for his compensable injuries because the Town of Garner and N.C. State did not strictly comply with the requirements of N.C. Gen. Stat. § 160A-288. We disagree.

N.C. Gen. Stat. § 160A-288 provides statutory authority for police departments to enter into mutual assistance agreements:

> In accordance with rules, policies, or guidelines officially adopted by the governing body of the city or county by which he is employed, and subject to any conditions or restrictions included therein, the head of any law-enforcement agency may temporarily provide assistance to another agency in enforcing the laws of North Carolina if so requested in writing by the head of the requesting agency. The assistance may comprise allowing offi-

cers of the agency to work temporarily with officers of the requesting agency (including in an undercover capacity) and lending equipment and supplies. While working with the requesting agency under the authority of this section, an officer shall have the same jurisdiction, powers, rights, privileges and immunities (including those relating to the defense of civil actions and payment of judgments) as the officers of the requesting agency in addition to those he normally possesses. While on duty with the requesting agency, he shall be subject to the lawful operational commands of his superior officers in the requesting agency, but he shall for personnel and administrative purposes, remain under the control of his own agency, including for purposes of pay. He shall furthermore be entitled to workers' compensation and the same benefits when acting pursuant to this section to the same extent as though he were functioning within the normal scope of his duties.

N.C. Gen. Stat. § 160-288(a) (2007). On 21 June 2007, the Garner Police Department and the N.C. State Campus Police Department entered into a written agreement pursuant to this statute. The terms of the Agreement mirror the statutory language and outline the responsibilities of each party:

> Pursuant to G.S. 160A-288, 160A-288.2 and 90-95.2, as amended, the undersigned do hereby covenant and agree to provide temporary assistance to each other in enforcing the laws of the State of North Carolina when requested in writing to do so and upon approval by the Chief of Police of Garner Police Department or the Chief of Police of NC State Campus Police Department.
>
> . . . .
>
> The terms and conditions of this agreement shall be as follows:
>
> 1. As provided by G.S. 160A-288, 160A-288.2, and 90-95.2, either agency may request of the other the temporary lending of personnel, equipment, and supplies.
>
> 2. Such request shall be in writing and executed by the Chief of the Requesting Agency, or in his absence, by such other person as has been designated to make or grant such requests. . . .
>
> . . . .
>
> 4. While on duty with the Requesting Agency, a law enforcement officer shall be subject to the lawful operational commands of the

officer in charge of the division to which he is temporarily assigned and shall operate under his direct supervision. . . .

. . . .

8. For personnel and administrative purposes, the temporarily assigned officer shall remain under the control of the Assisting Agency and shall be entitled to Worker's Compensation and other benefits to which he/she would be entitled were he/she functioning within the normal course and scope of his/her duties with the Assisting Agency.

. . . .

12. While on duty, with the Requesting Agency, the temporarily assigned officer of the Assisting Agency shall have the same jurisdiction, powers, rights, privileges, benefits and immunities as the officers of the Requesting Agency in addition to those which he/she normally possesses.

### Legislative Intent

The enactment of N.C. Gen. Stat. § 160A-288 serves dual purposes. First, it allows a police officer to temporarily provide assistance to another law enforcement agency and use his powers of arrest outside of his jurisdiction. A criminal defendant may challenge his arrest based upon the law enforcement agencies non-compliance with this statute and argue that the officer was not acting in the course of his official duties as a governmental officer at the time of the incident. *See State v. Locklear*, 136 N.C. App. 716, 721, 525 S.E.2d 813, 816-17 (2000). Officer Taylor's authority to use his powers of arrest outside of his jurisdiction is not the basis of this appeal. Second, the statute seeks to protect the officer's employment benefits, including his workers' compensation benefits. Our analysis focuses solely upon the later of these two purposes.

Town of Garner urges this Court to adopt a very narrow reading of N.C. Gen. Stat. § 160A-288 and hold that the technical written request/approval and pay requirements of N.C. Gen. Stat. § 160A-288 must be strictly complied with in order for the statute to be applicable for *personnel and administrative* purposes. We decline to do so.

### The Commission's Findings of Fact

The Commission made the following findings of fact pertaining to the written request/approval and pay requirements of N.C. Gen. Stat. § 160A-288:

16. Chief Tom Younce of N.C. State University's Police Department contacted Chief Tom Moss of the Garner Police Department by email dated September 26, 2007. He inquired whether Officer Taylor would be allowed to work the September 29, 2007 football game at N.C. State's Carter Finley Stadium on mounted patrol. Chief Younce and Chief Moss, who have known each other for many years, corresponded and agreed that the work Officer Taylor performed would be pursuant to the mutual aid and assistance agreement.

17. Officer Taylor received an email from Sergeant McIver, his direct supervisor, indicating that the mounted patrol duty had been approved and congratulating him on a job well done in developing the unit. Sergeant McIver indicated that Officer Taylor would receive overtime pay and that he did not need to complete a secondary employment application for the work.

18. Officer Taylor worked the N.C. State game on September 29. He was given personnel paperwork to complete at N.C. State and was eventually paid $30.00 per hour for his 12-hour shift. He did not receive overtime from the Garner Police Department. Chief Moss approved the payment by N.C. State. He believed that the full payment of $30.00 per hour by N.C. State without payroll deductions from the town of Garner would result in increased payments to Officer Taylor. Chief Moss wanted to compensate Officer Taylor for the increased cost associated with the mounted unit, most of which were born by the mounted officers.

19. Officer Taylor's participation at the game on September 29 demonstrates his deployment was envisioned to permit use of law enforcement powers under the mutual aid agreement as, in addition to providing security at the gate, Officer Taylor responded to a service call involving an assault.

. . . .

21. Although Officer Taylor knew that his work was pursuant to the mutual aid agreement and he had been informed that the Town of Garner would pay him overtime, he was asked to complete a secondary employment request form following the first game. He completed the request noting that he would be working the remainder of the home football games at N.C. State. The request was completed on October 1. Sergeant McIver approved the request form on October 4. Chief Moss wanted Officer Taylor to

receive as much pay as possible for his work given the amount of money that Officer Taylor was expending for the mounted patrol. The form was not signed by Chief Moss until October 29.

22. It was the understanding of Chief Moss and Chief Younce that all of Officer Taylor's participation at the home football games would be pursuant to the mutual aid and assistance agreement. Chief Younce and Chief Moss had developed a relationship over many years of professional association. Both Chief Moss and Chief Younce understood that his email request before the September 29 game constituted an adequate written request for officers to provide temporary assistance pursuant to the June 2007 mutual aid agreement. No further communication was necessary for future games. At no point did Chief Moss believe that the mutual aid agreement was not in effect, despite the existence of the secondary employment form.

23. If the mutual aid agreement had not been in effect, Officer Taylor would not have been able to work at the October 27 game. In order to use any law enforcement powers, Officer Taylor would have to be lent to N.C. State by the town of Garner Police Department because Carter Finley Stadium is outside of the jurisdiction of the town of Garner. Both Chief Moss and Chief Younce were aware of the necessity of the mutual aid and assistance agreement for Officer Taylor's work.

Town of Garner only assigns error to finding of fact 22. Therefore, findings of fact 16-21 and 23 are deemed to be supported by competent evidence and are binding on appeal. *See Estate of Gainey*, 184 N.C. App. at 501, 646 S.E.2d at 607 ("[F]ailure to assign error to the Commission's findings of fact renders them binding on appellate review."). Town of Garner does not argue that finding of fact 22 is not based upon competent evidence, but rather challenges the portion of that finding which states: "[n]o further communication was necessary for future games" and argues that this was inconsistent with the terms of the Agreement.

## Clear Intent of the Parties

The Commission's unchallenged findings of fact establish that on 26 September 2007, Chief Younce inquired into whether Officer Taylor would be available to work the 29 September 2007 football game on mounted patrol. Chief Moss granted this request. Chief Moss and Chief Younce understood that Chief Younce's request constituted

a written request for an officer to provide temporary assistance pursuant to the Agreement. As to football games after that date, both Chief Younce and Chief Moss had a clear understanding Officer Taylor was working pursuant to the Agreement. Chief Moss would not have allowed Officer Taylor to work mount patrol at N.C. State absent that Agreement. Officer Taylor also believed that he was working pursuant to the Agreement on 27 October. Officer Taylor completed a secondary employment request form noting that he would be working the remainder of the home football games at N.C. State. Sergeant McIver approved the request form on 4 October. The Commission's unchallenged findings of fact establish that all parties involved were aware of Officer Taylor's employment with N.C. State on 27 October 2007 and believed he was working pursuant to the Agreement.

The intent of the parties is further evidenced by the purpose of Officer Taylor's employment with N.C. State on that day. Unchallenged findings of fact 14 and 15 establish that: (1) mounted patrol officers were necessary at Carter-Finley Stadium during football games because up to 60,000 people can attend and approximately 40,000 people congregate in the parking lots abutting the stadium; and (2) that mounted patrol officers have an improved vantage point, can cover ground quickly, and control crowds effectively.

As the Commission correctly found, in order for Officer Taylor to work as a mounted patrol officer at N.C. State, he would have had to have been working pursuant to the Agreement to have any police powers outside of his jurisdiction. Otherwise, his presence would have served no purpose. The Commission's unchallenged findings of fact establish that the parties clearly intended for Officer Taylor to work the N.C. State football game pursuant to the Agreement.

## Method of Payment

Town of Garner also argues that "[a]lthough both appellee and co-defendant NC State University attempted to make light of the fact that appellee was paid directly by NC State, which was inconsistent with the statute, the manner of payment is one of the linchpins of the statute."

We again note that Town of Garner failed to assign error to any findings of fact regarding the method of payment. The Commission's unchallenged findings of fact establish that Chief Moss specifically approved the method of payment in this case. He allowed such a

**TAYLOR v. TOWN OF GARNER**

[204 N.C. App. 300 (2010)]

method of payment to occur because he believed that the payment of $30.00 per hour by N.C. State without payroll deductions from the Town of Garner would result in increased payments to Officer Taylor. Chief Moss wanted to compensate Officer Taylor for the amount of money that he was expending for the mounted patrol.

Both plaintiff and Town of Garner argue that the Garner Police Department's past practices with the Chapel Hill Police Department are relevant to show whether the payment method in the instant case was consistent with N.C. Gen. Stat. § 160A-288(a). However, the Commission made no findings of fact or conclusions of law as to this issue. We therefore decline to take this into consideration. *See Bowen v. ABF Freight Sys.*, 179 N.C. App. 323, 330-31, 633 S.E.2d 854, 859 (2006) ("[I]t is not this Court's role to make new findings of fact based upon the evidence[.]"). The Commission's unchallenged findings of fact show that the parties mutually agreed to the payment arrangement for Officer Taylor when working mounted patrol at N.C. State football games.

### Substantial Compliance

The Commission's unchallenged and binding findings of fact establish that the parties clearly intended for Officer Taylor to work as a mounted patrol officer with powers of arrest at N.C. State on 27 October 2007 pursuant to the Agreement and explicitly agreed that he would be paid directly by N.C. State. Because the Legislature clearly intended for law enforcement officers to be protected for purposes of workers' compensation benefits when acting in this capacity, we hold the parties substantially complied with the requirements of N.C. Gen. Stat. § 160A-288(a) for personnel and administrative purposes. The Commission's unchallenged findings of fact support the Commission's conclusion of law that on 27 October 2007 Officer Taylor was working pursuant to the Agreement and that Town of Garner is liable for his compensable injury pursuant to N.C. Gen. Stat. § 160A-288.

Based upon the above analysis, we need not address Officer Taylor's cross-assignment of error.

AFFIRMED.

JUDGES WYNN and CALABRIA concur.